INTERSTATE BUILDING & LOAN ASS'N v. EDGEFIELD HOTEL CO.

(Circuit Court of Appeals, Fourth Circuit. November 15, 1904.)

No. 527.

1. BUILDING AND LOAN ASSOCIATIONS—ACCOUNTING WITH BORROWING STOCK-HOLDER—INTEREST.

On a settlement between a building and loan association and a borrowing stockholder under a contract containing a provision that "upon final settlement with the association it shall retain as installments on said stock and interest no greater sum than the amount actually advanced,

with interest thereon at the rate of eight per cent. per annum," the stockholder has the right, at his election, to be treated as a borrower, simply; and in such case the rule of partial payments applies, and the excess of each payment made over the interest then accrued is to be applied in reduction of the principal of his debt, and subsequent interest computed on the principal as so reduced.

Appeal from the Circuit Court of the United States for the District of South Carolina, at Charleston.

For opinion below, see 120 Fed. 422. See, also, 109 Fed. 692.

W. A. Wimbish, for appellant.

Robert C. Alston and N. G. Evans (Arthur S. Tompkins and M. C. Wells, on the brief), for appellee.

Before MORRIS, BRAWLEY, and PURNELL, District Judges.

MORRIS, District Judge. The Interstate Building & Loan Association, a Georgia corporation, having its principal office in Columbus, in that state, was prior to October 24, 1892, doing business as a building and loan association. There was a local board in the town of Edgefield, in South Carolina. The purpose of these local boards was defined by its by-laws to be as follows:

"Article 1, § 2. To give to every city and town in the United States in which this association has an established branch the advantages and benefits of a local building and loan association combined with the advantages of safe and accumulative investment."

On October 24, 1892, the Edgefield Hotel Company, a corporation of South Carolina, having its place of business at Edgefield, in that state, obtained from the Interstate Building & Loan Association an advance of $6,000. To do this, the hotel company had subscribed on September 24, 1892, for 120 shares of stock, and paid an admission fee of $120. It made one payment of $72 as installment dues on the 120 shares of stock before the loan was granted, and after the loan was granted it made, without default, 74 monthly payments, of $102 each, amounting in all to $7,650—the last payment being in December, 1898—and then tendered $142, and demanded to have the mortgage released, as fully satisfied. The building association denied that its mortgage was satisfied, and in March, 1901, filed in the Circuit Court of the United States for the District of South Carolina its bill of complaint to foreclose the mortgage; alleging that there was still due to it the loan of $6,000, with interest accrued from December, 1898, to March, 1901, and 10 per cent. attorney's fees. Subsequently the building association, in July, 1902, was adjudged insolvent, and a receiver appointed, who was made a party complainant in this cause.

To secure the performance of the conditions under which the hotel company obtained the loan of $6,000, it executed a bond, secured by a mortgage, conditioned to pay $72 on the third Wednesday of every month, as installments, and $30 as interest, until the 120 shares borrowed on should have fully matured; that is, until each share by the installments paid on it, together with its declared proportionate profits, should be worth $100. There was, however, inserted in the bond, to meet certain decisions of the courts of South Carolina with regard to

usury in building association mortgages, the following important stipulation, viz.:

"It is further understood that upon final settlement with the association it shall retain as installments on said stock and interest no greater sum than the amount actually advanced with interest thereon at the rate of eight per cent. per annum."

The hotel company has availed itself of this stipulation, and the sole question raised by this appeal is as to the method of computing the interest under this agreement. On behalf of the building association it was contended that the proper method is to charge the hotel company with the $6,000 advanced, and 8 per cent. per annum interest thereon, and to credit on the sum thus ascertained the gross amount of all payments made, without allowing any interest on the payments. By this method the amount still remaining due would be over $1,300. On behalf of the hotel company it was contended that the proper method of computation was to calculate interest at 8 per cent. in favor of the building association up to the date of each payment, and, as the payments always exceeded the interest due, to reduce the debt by the amount of the excess of the payment over the interest accrued, on the principle of partial payments. The court below (Simonton, Circuit Judge) sustained the contention of the hotel company, except that the admission fee of $120 and the payment of dues before the loan was obtained were not taken into account; and, as the result, the auditor found that when the last installment payment was made by the hotel company there was only due by the hotel company a balance of $34.21, with interest at 8 per cent. until paid; and as the hotel company had tendered, before the filing of the bill of complaint, $144, the court adjudged that the building association should bear the costs, and that upon the payment of $34.21, with interest thereon at 8 per cent. until paid, the defendant was entitled to have the mortgage canceled.

In the course of the proceedings several alternative methods were suggested by the building association for arriving at the proper sum payable by the hotel company under the bond and mortgage and the by-laws of the building association; but at the argument in this court the sole ground of error relied upon was that the decree below adopted the rule of partial payments as proper to be applied in this case, and that the costs were wrongly put upon the appellant.

Very little light is obtainable on this question from adjudications in building association cases, as the stipulation by which the settlement in this case is controlled is unusual. It is urged by the appellant that as the monthly installments were not paid in reduction of the loan, but were primarily paid by the hotel company, as shareholder, for the purpose of maturing its stock, and not as payments to be applied to its loan, and were payments on shares made as well by those who did not procure loans as by those who did, it is not consistent with justice or the contract of the parties that the installment payments should be applied to the loan. There would be force in this contention if the relation of the hotel company to the building association had remained that of a borrowing stockholder obliged to continue his installments until his stock matured. But the stipulation that the building association, in the final settlement, should not retain of the installments and

interest paid more than the amount actually advanced, and 8 per cent. interest, recognizes that in the final settlement the borrowing stockholder may elect to be treated as a borrower, simply, and settle as a borrower would settle with a lender.    Without some restrictive stipulation, the borrowing stockholder might not be able to escape from his relation of stockholder, no matter how many years it might require to mature the stock, nor how excessive the rate of interest might become.    To avoid this possible result, and to accord with the decisions in South Carolina, the stipulation was inserted for the borrower's protection in a contract prepared by the building association.    Under such a contract prepared by the lender, if there is ambiguity, then by the established rule it is to be construed favorably to the party who, in order to obtain a loan at an exceptional rate of interest, is required to sign a contract, the stipulations of which are prepared by the other party to it.    But we do not think that there is any ambiguity.    What, under ordinary circumstances, would be the meaning of a stipulation that the lender should not retain out of the payments made to him more than the amount actually advanced with interest at 8 per cent.?    It would, we think, be understood to mean that the lender should receive back the money advanced, and, for the use of his money while the borrower had it, 8 per cent. interest, and no more.    If, in this case, the building association should receive the amount advanced, and 8 per cent. interest on it for the whole period of over six years, until the last payment was made, it would have had, in addition to 8 per cent. interest, the use of all the sums which in monthly payments during six years the borrower has paid back, and the use of which the borrower did not have.  This would be greatly in excess of 8 per cent. interest.    The rule to be applied in such a case between borrower and lender is the rule of partial payments, by which the excess of every payment made over the interest then accrued is applied in reduction of the principal, and, the subsequent interest computed on the principal so reduced. Woodward v. Jewell, 140 U. S. 247, 248, 11 Sup. Ct. 784, 35 L. Ed. 478.

The stipulation in this case clearly states, in unmistakable language, that out of the installments and interest paid by the borrower the building association shall retain on final settlement no more than the amount advanced, with interest thereon at 8 per cent.    There is nothing whatever to suggest that in making the computation the ordinary rule of computing interest is not to be applied, and we think the borrower is entitled to have the benefit of that ordinary rule.    It was so held by the learned circuit judge who heard the case below, and his decision is ably supported by the opinion filed by him, reported in 120 Fed. 422.

Affirmed.